78 F.3d 584
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Kenneth DEWIT, Jr; Pamela L. Dewit, Husband and Wife,
Plaintiffs-Appellants,
v.
MORGEN SCAFFOLDING, INC., Defendant-Appellee.
 No. 94-1947.
 United States Court of Appeals, Sixth Circuit.
 March 6, 1996.
 
 Before: JONES, and BOGGS, Circuit Judges, and COFFMAN, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiffs Kenneth and Pamela Dewit brought a product liability action against Defendant Morgen Scaffolding, Inc., alleging unreasonably dangerous design defect, failure to warn and instruct, and loss of consortium. Plaintiffs appeal the district court's order granting Defendant's Motion for a Judgment as a Matter of Law in Actions Tried by Jury, pursuant to Federal Rule of Civil Procedure 50. The record fails to show sufficient evidence of defective design or demonstrate that Morgen had a duty to warn or instruct. Therefore, we affirm the judgment of the district court.
 
 
 2
 * Plaintiff Kenneth Dewit was seriously injured when an unsecured plank on an adjustable tower scaffolding shifted, causing him to fall 30-35 feet. At the time of the accident, Mr. Dewit, a lifetime construction worker, had been working as a bricklayer for Reinke and Sons Construction Company for fourteen months. Part of his job responsibility included dismantling the scaffolding from which he fell.
 
 
 3
 Mr. Dewit's employer, Reinke, has been in the construction business for over fifty years and has been involved in many projects where scaffolding is used. It has a printed safety policy that is supplied to all company employees at the time of hire and through a trained safety director, Reinke provides safety briefings. About fifteen years before the accident, Reinke began using scaffolding manufactured by Morgen. In his safety briefings, Reinke's safety director has provided information on different scaffoldings, including the Morgen scaffolding.
 
 
 4
 Morgen's adjustable tower scaffolding has been available for over forty years. Generally, Morgen only distributes its scaffolding products to professional construction operations. Occasionally, Morgen modifies its adjustable tower scaffolding design, and currently the design is unique. Other manufacturers of adjustable tower scaffolding use a seven-foot span between towers while the distance between Morgen towers is seven and one-half feet. The net effect of this one-half foot difference is that when Morgen towers are erected with industry standard sixteen foot planks, the planks have a six inch overhang and twelve inch overlap, versus the twelve inch overhang and twenty-four inch overlap on competitors' towers that are separated by only seven feet.
 
 
 5
 With its product, Morgen provides an informational booklet (instructions) and video entitled, "Here's How." Reinke had both the booklet and the video at the time of the accident. The booklet contains warnings about securing planks, information on regulatory requirements and instructions on the general safe use of the product. The booklet, however, does not provide guidance on how to secure the planks or specific warnings of the danger involved in falling off of the scaffolding. The Morgen scaffolding also comes with a decal warning users not to remove cross braces, to prevent the scaffolding from collapsing; a similar decal concerning the shifting of the planks is not provided.
 
 
 6
 In 1980, ten years before Mr. Dewit's accident, the United States National Bureau of Standards prepared a report entitled, "Analysis of Scaffold Accident Records and Related Employee Casualties," defining problems with scaffolding (specifically falling planks) and resultant injuries. Although this report evaluated many different types of scaffolding, it did not mention Morgen or Morgen's products.
 
 II
 
 7
 On the last day of trial, at the close of witness testimony, the district court granted Defendant's motion for judgment as a matter of law. The court denied Plaintiffs' request for reconsideration, and thereafter Plaintiffs timely appealed to this court. Plaintiffs challenge the district court's award of judgment as a matter of law. They assign error to the district court's rulings that: (1) Plaintiffs had produced no evidence that the Morgen towers were defective, and (2) there was insufficient evidence presented to raise a material issue of fact to the jury on Plaintiffs' allegation that the Defendant failed in its duty to warn/instruct Mr. Dewit on the safe use of its product.
 
 
 8
 This court reviews the grant or denial of a judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) de novo. Snyder v. AG Trucking, Inc., 57 F.3d 484, 490 (6th Cir.1995). We apply the same standard on review as the district court applies in deciding Rule 50(a) motions. Monette v. AM-7-7 Baking Co., 929 F.2d 276, 280 (6th Cir.1991). Before granting the motion:
 
 
 9
 [T]he district court must determine whether there was sufficient evidence presented to raise a material issue of fact for the jury. As applied in this context, "sufficient evidence" will be found unless, when viewed in the light of those inferences most favorable to the non movant, there is either a complete absence of proof on the issues or no controverted issues of fact upon which reasonable persons could differ.
 
 
 10
 Monette, 929 F.2d at 280 (citations omitted). Thus, this court will not weigh the evidence, evaluate the credibility of the witnesses, or substitute its judgment for that of the jury; rather, we view the evidence in a light most favorable to the party against whom the motion is made, and give that party the benefit of all reasonable inferences. See Agristor Leasing v. A.O. Smith Harvestore Products, Inc., 869 F.2d 264, 268 (6th Cir.1989). When sitting in diversity, we use the standards for a judgment as a matter of law applicable under the law of the forum state. Kingsley Assoc., Inc. v. Del-Met, Inc., 918 F.2d 1277, 1280-81 (6th Cir.1990). In Michigan, whose law is applicable to the case at bar, the standard is the same as that annunciated above. See Schanz v. New Hampshire Ins. Co., 418 N.W.2d 478, 481 (Mich.1988) (stating a judgment as a matter of law may be granted only when there is insufficient evidence as a matter of law, to make an issue for the jury).
 
 III
 
 11
 With respect to the claim of design defect, the district court concluded there was no evidence that the towers were defective. Our review of the record leads us to agree with that conclusion. Therefore, the district court did not err in holding that there was insufficient evidence to present to the jury on that question.
 
 
 12
 The decisive issue on appeal is whether Morgen owed Mr. Dewit a duty to warn of the dangers associated with not securing one end of a scaffolding plank to the Morgen tower or to instruct on how to secure the plank. "[I]t is well-settled law that the question of duty is to be resolved by the court rather than the jury." Rusin v. Glendale Optical Company, 805 F.2d 650, 653 (6th Cir.1986); Antcliff v. State Employees Credit Union, 327 N.W.2d 814, 821 (Mich.1982). We have carefully reviewed the record as well as the rulings of the district court on the issue of duty to warn/instruct. Our conclusion is that the district court correctly applied the law in holding that there was no such duty. See J.A. at 44a-60a, applying Antcliff, 327 N.W.2d 814 (holding that duty to warn is not absolute), Tasca v. GTE Products, 438 N.W.2d 625, 629 (Mich.Ct.App.1989) (providing test to use in determining sophisticated user), and Ross v. Jaybird Automation, Inc., 432 N.W.2d 374, 376 (Mich.Ct.App.1988) (holding that a manufacturer is entitled to presume that sophisticated employer had mastery of product and would warn employee of any dangers).
 
 
 13
 Plaintiffs cite Jones v. United Metal Recyclers, 825 F.Supp. 1288, 1297-98 (W.D.Mich.1993) (holding that a manufacturer was liable when it could have placed warnings on product that may have avoided injury), and Pettis v. Nalco Chemical Co., 388 N.W.2d 343 (Mich Ct.App.1986) (holding that the case should go to the jury when a reasonable person could find that a warning was proper even though the user knew of the danger) to substantiate their claim that Morgen had a duty to warn/instruct. These cases are not persuasive.
 
 
 14
 Further, we find support for our conclusion in our own precedent. In Rusin, 805 F.2d at 653, this Court applied Antcliff and held that the manufacturer did not have a duty to warn. Of greater consequence, we derived a reasonableness standard from Antcliff. Under Michigan law:
 
 
 15
 no manufacturer may be held liable absent a showing of some duty owed the plaintiff and a breach of that duty resulting in the complained injuries. In a failure to warn case, the Michigan courts have characterized the manufacturer's obligation as the duty "to warn the purchasers or users of its product about dangers associated with intended use." The scope of this duty ... is "reasonable care under the circumstances." [A] manufacturer's liability to a purchaser or user of its product should be assessed with reference to whether its conduct, including the dissemination of information about the product, was reasonable under the circumstances.'
 
 
 16
 Rusin, 805 F.2d at 653-54 (quoting Antcliff, 327 N.W.2d at 818-19). We find Morgen's actions reasonable under the circumstances.
 
 
 17
 Having correctly held that there was no duty to warn/instruct, the district court went on to find that if such a duty did exist, it was satisfied. Although it is well-settled law that the question of duty is to be resolved by the court rather than the jury, see Rusin, 805 F.2d at 653 and Antcliff, 327 N.W.2d at 815, if the court finds that the defendant owed the plaintiff a legal duty, the reasonableness (i.e., the adequacy, accurateness, and effectiveness) of the defendant's conduct under those circumstances is a question for the jury. The court may dispose of the reasonableness issue, as a matter of law, only if it finds that the evidence of record would not allow a reasonable juror to find the warning inaccurate, inadequate or ineffective. In this case we do not need to reach that question as we have found that no duty was owed.
 
 III.
 
 18
 For the foregoing reasons we AFFIRM the district court's grant of a judgment as a matter of law.
 
 
 
 [1]
 The Honorable Jennifer B. Coffman, United States District Judge for the Eastern and Western District of Kentucky, sitting by designation